

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 4, 2024

**BY ECF**
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States* v. *George Sewell*, S2 22 Cr. 238 (VSB)

Dear Judge Broderick:

  The Government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for January 11, 2024. The defendant, George Sewell, faces a United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") range of 24 to 30 months' imprisonment. For the reasons set forth below, the Government submits that a sentence between 10 and 16 months—which is the defendant's Guidelines range if the Guideline for powder cocaine, instead of crack cocaine, were applied—is fair and appropriate.

  **A. Offense Conduct**

  On July 2, 2019, 32-year-old Christopher Matrisciani was found dead of an apparent drug overdose in his hotel room in Manhattan. (Presentence Investigation Report dated December 22, 2023 ("PSR") ¶ 13). The medical examiner subsequently determined that Matrisciani died as a result of acute intoxication from heroin, fentanyl, and cocaine. (PSR ¶ 13). Although law enforcement agents were not able to access the contents of Matrisciani's cell phone, call records reflect that Matrisciani exchanged a number of calls and text messages on the evening of July 1— the night before the overdose—with a phone number later identified as belonging to Andrew Auffredou, a co-defendant in this case. (PSR ¶ 14 & n.2). Cell site records also reflect that Matrisciani's phone and Auffredou's phone were together in the vicinity of Auffredou's residence in Staten Island that evening, and that Matrisciani returned to Manhattan after leaving the vicinity of Auffredou's residence. (PSR ¶ 14).

  In December 2019, agents seized and searched Auffredou's phone pursuant to a search warrant. (PSR ¶ 9 n.2). Although Auffredou's phone did not contain many of the text messages that phone records reflect he sent or received—suggesting that Auffredou either deleted messages or otherwise failed to preserve text messages between the time of Auffredou's overdose and the execution of the search warrant six months later—Auffredou's phone contained a number of drug-related communications with the defendant. (PSR ¶ 9 & n.5). Specifically, messages reflect that,

Hon. Vernon S. Broderick  Page 2
January 4, 2024

between November 2018 and August 2019, the defendant—who lived in Manhattan—repeatedly supplied Auffredou, who lived in Staten Island, with drugs, including at least crack cocaine. (PSR ¶ 9).

The text messages that Auffredou and the defendant exchanged, as detailed in the PSR, include (i) requests by Auffredou in February 2019 that the defendant bring him "a dub"; (ii) a direction by Auffredou later that month to the defendant to "make sure the bags are proper," adding "they were good last night. 2 nights ago they were half the size"; (iii) complaints by Auffredou to the defendant in April 2019, in which Auffredou wrote: "These bags and the rocks are all wet from putting the bags in your mouth. Don't do that with my shit bro. Fucking disgusting" and (iv) discussions in June 2019 about the defendant providing Auffredou with a "sample" and a "carepackage." (PSR ¶ 9). Auffredou's phone contained hundreds of messages with the defendant. Although not all of the text messages between Auffredou and the defendant were recovered, those that were recovered appear to relate exclusively to drugs.

Text messages also reflect that Auffredou shared the defendant's phone number with at least one other individual (an individual with whom Auffredou frequently discussed obtaining drugs), and that Auffredou, that individual, and the defendant met in person on at least one occasion in May 2019. (PSR ¶ 10). Call records do not reflect that the defendant ever communicated directly with Matrisciani, nor do the recovered text messages between the defendant and Auffredou specifically refer to heroin or fentanyl. Call records do reflect, however, that on June 15, 2019, the defendant's phone exchanged three calls and 22 text messages with an individual in Staten Island who experienced a non-fatal opiate overdose the following day—about two weeks before Matrisciani's fatal overdose. (PSR ¶ 18). The defendant's phone also had a completed call on January 8, 2020, with an individual who fatally overdosed in Staten Island the following day. (PSR ¶ 18).

### B. Procedural History and the Applicable Guidelines Range

The defendant and Auffredou were both charged by complaint with conspiracy to possess with intent to distribute heroin, fentanyl, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and were both arrested pursuant to that complaint on December 21, 2021. (Dkt. Nos. 1, 5, 8). On April 22, 2022, the defendant and Auffredou both waived indictment and were charged by information with the same drug conspiracy count. (Dkt. Nos. 27–29). On October 3, 2023, the defendant waived indictment and pleaded guilty to a superseding information that charged him with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).

The defendant pleaded guilty pursuant to a written plea agreement (the "Plea Agreement"), in which the parties stipulated to a Guidelines sentencing range. The Guidelines calculation in the Plea Agreement is consistent with the calculation in the PSR, specifically: the base offense level is 18, because the offense involved between 11.2 and 16.8 grams of crack cocaine, and three levels are subtracted for acceptance of responsibility, resulting in an offense level of 15. (PSR ¶¶ 4, 27–36). The defendant has four criminal history points, which places him in Criminal History Category III, and results in a Guidelines range of 24 to 30 months. (PSR ¶¶ 4, 54–56, 104). The Probation Office recommends a sentence of 16 months' imprisonment.

### C. Discussion

#### 1. Applicable Law

As the Court is well aware, the Guidelines continue to provide guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6. To the extent the Court imposes a sentence outside the Guidelines range, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 46).

#### 2. A Sentence Within the Powder Cocaine Guideline Range of 10 to 16 Months Is Appropriate

On December 16, 2022, the Department of Justice issued a new policy regarding charging, pleas, and sentencing in drug cases (the "Drug Cases Memo"). In order to eliminate the crack-to-powder cocaine sentencing disparity, and pursuant to the Drug Cases Memo, at sentencing in crack cocaine cases, prosecutors "should advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine" and "[w]here a court concludes that the crack cocaine guidelines apply, prosecutors should generally support a variance to the guidelines range that would apply to the comparable quantity of powder cocaine."

Accordingly, although the PSR and Plea Agreement accurately reflect the defendant's Guidelines range, the Government respectfully requests that the Court sentence the defendant consistent with the Guidelines range for powder cocaine. Here, the defendant would be responsible for at least 11.2 grams, but less than 16.8 grams, of powder cocaine, which results in a base offense level of 12. *See* U.S.S.G. § 2D1.1(c)(14). With a two-level reduction for acceptance of responsibility, the defendant's resulting Guidelines range would be 10 to 16 months' imprisonment. A sentence within that range is appropriate, based primarily on the seriousness of the defendant's conduct and the need for specific deterrence.

The defendant sold crack cocaine over a period of at least nine months. Although the defendant was not a major narcotics trafficker, the drugs he sold had the power to destroy lives and communities. Indeed, this case exemplifies the destructive power of highly addictive narcotics. As the PSR reflects, and as the Court is aware from the defendant's numerous violations of his pretrial release conditions, the defendant struggles with substance abuse issues. (*E.g.*, PSR ¶ 87). Co-defendant Auffredou also struggles with substance abuse, as the docket reflects. (*See, e.g.*, Dkt. No. 80). And, although the Government is not alleging that any of the drugs the defendant distributed caused Matrisciani's overdose, the death of a 32-year-old—who, at a minimum, used drugs with the defendant's co-conspirator (*see* PSR ¶ 16)—further underscores the consequences that can result from the distribution of drugs.

Hon. Vernon S. Broderick  Page 4
January 4, 2024

      The defendant's criminal history similarly calls for a substantial custodial sentence. This case is the defendant's 17th criminal conviction. (*See* PSR ¶¶ 38–53). Although many of the defendant's prior convictions were for simple possession and similar offenses, the short prison sentences (and non-custodial sentences) the defendant received did not dissuade him from continuing to break the law. The defendant committed the instant offense while serving a five-year term of probation. Even while on pretrial release in this case, despite intensive efforts from his attorneys and Pretrial Services officer, the defendant continued to use PCP and declined to avail himself of mental health and substance abuse treatment opportunities, which ultimately led to his remand pending trial and sentencing. In the Government's view, a sentence within the powder cocaine Guideline range appropriately balances the need to reflect the seriousness of the offense and to protect the community with the defendant's ongoing mental health and substance abuse struggles.

      **D.**      **Conclusion**

      For the reasons set forth above, the Government respectfully submits that a sentence within the 10-to-16-month powder cocaine Guideline range would be fair and appropriate.

      Respectfully submitted,

      DAMIAN WILLIAMS
      United States Attorney for the
      Southern District of New York

By: *[signature]*
      Patrick R. Moroney
      Assistant United States Attorney
      (212) 637-2330

cc:    Glenn Garber, Esq., and Nora Stewart, Esq. (via ECF)